FILED
2011 Dec-22 PM 03:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JEFF HICKS, | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 7:08-CV-0536-LSC |
| MERCEDES-BENZ U.S. INTERNATIONAL, INC., | ) ) ) | |
| Defendant. | ) | |
| | | |
| GRALYN LAWSON, et al., | ) | |
| Plaintiffs; | ) | |
| | ) | |
| vs. | ) | 7:09-CV-1157-LSC |
| MERCEDES-BENZ U.S. INTERNATIONAL, INC., | ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

**I. Introduction.**

The Court has for consideration the first in a series of motions for summary judgment filed by Defendant Mercedes-Benz U.S. International, Inc. ("MBUSI"). The present motion, filed on August 15, 2011 (Doc. 98), urges the Court to enter final judgment against a group of seven Plaintiffs whose claims are allegedly barred by the doctrine of judicial estoppel. Plaintiffs filed a response (Doc. 113) to the motion on September 14, 2011, detailing their opposition to the motion as it relates to just one of

those seven: Gralyn Lawson, the lead Plaintiff. The response indicated that the motion is unopposed as to the other six Plaintiffs.[1] (Doc. 113 at 2.) MBUSI filed a reply brief in support of summary judgment on October 5, 2011. (Doc. 119.) Having been fully briefed by the parties, the motion is now ripe for decision.

**II. Facts.**[2]

Gralyn Lawson was hired by MBUSI on January 6, 1996, and was promoted to Group Leader ("GL") in October of that year. As a GL, he was classified by MBUSI as an exempt employee. MBUSI made changes to the overtime policy for exempt employees in February and March of 2005, and again in March of 2006. Following the March 2006 changes, GLs could be paid overtime only after completing five unpaid hours per week of pre- and post-shift work activities designated as "casual time." While overtime would still be paid for extra hours worked on weekends without the casual time requirement, the policy effectively required forty-five hours, rather than forty, to be worked before any weekday overtime could accrue. This casual time requirement was removed in a revision of the overtime policy on April 7, 2008.

---

[1] Because the motion is opposed only as to Mr. Gralyn Lawson, the facts and discussion below are primarily focused on Mr. Lawson.

[2] The facts set out in this opinion are gleaned from the "Agreed Upon Undisputed Common Facts Applicable to Summary Judgment Motions," (Doc. 97), the parties' individual submissions of facts claimed to be undisputed, their respective responses to those submissions, as well as the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

In March of 2007, Lawson was transferred to the position of Team Relations Specialist. The next month he filed a voluntary petition for Chapter 13 Bankruptcy in the U.S. Bankruptcy Court for the Northern District of Alabama, Western Division. Lawson was discharged by the Bankruptcy Court on February 18, 2009, and his bankruptcy case was closed on June 22, 2009.

As part of his voluntary petition for bankruptcy, Lawson completed a "Schedule B" form, which required him to list and describe the property that he owned in any of thirty-five different categories, including a catch-all provision. Question twenty-one required Lawson to disclose any "contingent and unliquidated claims of every nature." (Doc. 100-8 at 15.)[3] His response to this question was a mark in the box for "NONE." He likewise checked the box for "NONE" in response to question thirty-five, for "[o]ther personal property of any kind not already listed." (Doc. 100-8 at 16.) Lawson's typed signature then appears on a declarations page, declaring under penalty of perjury that he had "read the foregoing summary and schedules," including Schedule B, and further declaring that his responses were "true and correct to the best of [his] knowledge, information and belief." (Doc. 100-8 at 19.)

On June 10, 2009, a number of GLs and former GLs filed a complaint against

---

[3] Unless otherwise noted, citations to the record are to the document numbers in the *Hicks vs. MBUSI* case, 7:08-cv-0536-LSC. Document numbers preceded by "*Lawson*" reflect the document number assigned in the *Lawson v. MBUSI* case, 7:09-cv-1157-LSC.

MBUSI. The essence of the complaint is that MBUSI was "requiring [them] . . . to work overtime without payment of overtime." (*Lawson* Doc. 1 at 9.) Lawson's name was the very first in the list of over 100 people described by the complaint as "named Plaintiffs."(*Lawson* Doc. 1 at 3.) These Plaintiffs together filed a "Notice of Filing of Consents to Joinder" on August 10, 2009. (*Lawson* Doc. 9.) At no point did Lawson amend his bankruptcy pleadings to disclose his claims against MBUSI, or his lawsuit against it. Lawson ended his employment at MBUSI on December 31, 2009.

### III. Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In

evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the movant has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## IV. Analysis.

MBUSI argues that seven of the present Plaintiffs—Danny Bankston, Frank Coffin, Gralyn Lawson, Melissa Martin, Gary Quarles, Donald White, and Alvin Williams—should be barred from asserting their claims against MBUSI on grounds of judicial estoppel. The doctrine of judicial estoppel, perhaps better described as "preclusion of inconsistent positions,"[4] prevents a party from "asserting a claim in

---

[4] *See* WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2d § 4477 n.1 (2d ed. 2002) (noting the imprecision of the term "judicial estoppel" and the unnecessary risk of confusion with the conceptually distinct "collateral estoppel").

a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1284 (11th Cir. 2002). The purpose of this equitable doctrine is to "protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 582 U.S. 742, 749 (2001).

The determination of whether the doctrine should apply must be informed by the specific circumstances of each individual case. As such, there are no "inflexible prerequisites or an exhaustive formula" to be followed. *Burnes*, 291 F.3d at 1285. In light of the doctrine's purpose, however, there are two predominant factors to consider. The first is whether the alleged inconsistent positions were "made under oath in a prior proceeding." *Id.* at 1284. The second is whether the inconsistencies are the product of "intentional contradictions, not simply error or inadvertence." *Id.* at 1286.

Examples of satisfying the first factor frequently involve a party to a civil action who has also been a debtor in bankruptcy. Bankruptcy proceedings, by their very nature, require "[f]ull and honest disclosure" in order to function effectively. *Id.* A full and honest disclosure of a debtor's property is especially important, because a "debtor seeking shelter under the bankruptcy laws has a statutory duty to disclose all assets, or potential assets to the bankruptcy court." *Robinson v. Tyson Foods, Inc.*, 595

F.3d 1269, 1274 (11th Cir. 2010) (citing 11 U.S.C. §§ 521(1), 541(a)(7)). It is well settled that "a pending lawsuit seeking monetary compensation qualifies as an asset" for this purpose, and that "such an asset qualifies as property of the bankruptcy estate." *Id.*

This duty to disclose assets does not end once the bankruptcy forms have been submitted; rather, "[t]he duty to disclose is a continuing one." *Burnes*, 291 F.3d at 1286. This holds true regardless of whether the debtor has filed under Chapter 7 of the bankruptcy code or, as here, under Chapter 13. *See Robinson*, 595 F.3d at 1274. Because of this ongoing duty to disclose, and the fact that such disclosures are made under penalty of perjury, the omission of a legal claim—or potential claim—for money damages will ordinarily meet the criteria for the first factor, an inconsistent representation "made under oath in a prior proceeding." *Burnes*, 291 F.3d at 1284.

The second factor looks to whether the inconsistency is intentional, and "calculated to make a mockery of the judicial system." *Burnes*, 291 F.3d at 1285 (quoting *Salomon Smith Barney, Inc. v. Harvey, M.D.*, 260 F.3d 1302, 1308 (11th Cir.2001)). Such intent can, however, be inferred from a party's knowledge of undisclosed assets, together with a motive to conceal them. In the bankruptcy context in particular, the failure to disclose a legal claim will be found unintentional for judicial estoppel purposes "only when, in general, the debtor either lacks knowledge of the

undisclosed claims or has no motive for their concealment." *Robinson*, 595 F.3d at 1275 (quoting *Barger v. City of Cartersville*, 348 F.3d 1289, 1296 (11th Cir. 2003)).

As noted above, Plaintiffs do not oppose the application of judicial estoppel to six of the Plaintiffs named in the motion, notwithstanding some differences between them. Plaintiffs Bankston, Coffin, and White began their bankruptcy cases before the *Lawson* suit was filed. Martin, Quarles, and Williams, meanwhile, filed their bankruptcy cases after it had already begun. While all of them failed to disclose their respective claims against MBUSI when first filing for bankruptcy, three of the seven—Coffin, Martin, and White—later amended their bankruptcy pleadings to include their claims against MBUSI. They did so, however, only after being questioned about their bankruptcy cases in depositions for this case.

Plaintiffs concede that these distinctions ultimately make no difference. By not opposing MBUSI's motion, they concede that under the framework discussed above, six of the Plaintiffs withheld assets from the bankruptcy court and did so intentionally. They argue that judicial estoppel is not applicable to Lawson, however, due to additional unique circumstances.

Plaintiffs contend that Lawson's situation is different, and should therefore lead to a different result, because his bankruptcy case was not only *started* before the suit against MBUSI, but was *finished* prior to it as well. Given the dates of the relevant

events, this argument requires at least one of two other points to be accepted. First, Plaintiffs argue that Lawson's duty to disclose assets expired at the date of discharge (February 18, 2009), rather than the date that his bankruptcy case was finally closed (June 22, 2009). Second, although the complaint itself described Lawson as a "named plaintiff" at the time it was filed (June 10, 2009), Plaintiffs assert that he did not actually become a "party-plaintiff" until the date he filed his consent to sue (August 10, 2009).[5] If either of these points is correct, then there was no overlap between the bankruptcy case and this civil action. If there was no overlap between them, so their argument goes, then it follows that Lawson "never took an inconsistent position with regard to his bankruptcy proceeding and this proceeding." (Doc. 113 at 5.) As Plaintiffs themselves state in their brief, "[t]his factual timeline is critically important." (Doc. 113 at 3.)

The factual timeline is indeed critically important, but so is focusing on the right set of facts. Even if the Court were to accept Plaintiffs' timeline, and the two points described above, their argument still fails because the relevant time is when Lawson's claims *arose* against MBUSI, and not when he filed suit. A debtor has a duty

---

[5]While the Court accepts Plaintiffs' point for the sake of argument below, it appears that not even the Plaintiffs are entirely willing to accept it. As stated by Plaintiffs themselves in their response to the next in this series of summary judgment motions, "[t]his is a consolidated case where all one-hundred-plus Plaintiffs are named plaintiffs and have field suit on their own behalf. As a result of the procedural nature of this case, the date when this action was commenced is the date when Plaintiffs *filed the complaint*." (Doc. 118 at 11-12)(emphasis in original).

to "disclose all assets, or *potential assets*." *Robinson*, 595 F.3d at 1274 (emphasis added). Whether Lawson ever acted upon it or not, any potential claim against MBUSI—at any point during the pendency of his bankruptcy case—needed to be disclosed. The "factual timeline" that is "critically important," therefore, is whether Lawson's *potential* claims existed while his bankruptcy was ongoing. It did.

The overtime compensation policy requiring "casual time" became effective in March of 2006. It applied to Lawson in his capacity as a GL until March of 2007, when he was transferred to the position of Team Relations Specialist. He filed his bankruptcy case shortly thereafter, in April of 2007. Any claims Lawson had against MBUSI as a GL arose before he filed for bankruptcy, yet it is undisputed that Lawson did not disclose that claim at filing, or amend his pleadings to add it later.

Lawson's duty to disclose his potential claims was not lessened by the fact that he may not have know the precise legal theory under which he had a cause of action. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) ("The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . to suggest it may have a cause of action, then that is ia 'known' cause of action such that it must be disclosed.") (citation omitted). The record indicates that Lawson was well aware of MBUSI's overtime compensation policy and the changes to it. Plaintiffs do not assert that Lawson remained ignorant of

the policy throughout the time it was applicable to him. The facts indicate that Lawson had more than enough information to suggest that he had a cause of action, and therefore should have disclosed it in his bankruptcy petition.

Plaintiffs argue further that judicial estoppel on these facts would be a "draconian remedy" that would "contravene the doctrine's intent." (Doc. 113 at 5.) While judicial estoppel is indeed "strong medicine," its application here is entirely appropriate. There is no requirement that the inconsistent positions be made in two simultaneous proceedings; on the contrary, expressions of the rule generally anticipate some temporal distance between them. *See, e.g., New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding . . . he may not *thereafter*, simply because his interests have changed, assume a contrary position . . . .") (citation omitted); 18 MOORE'S FEDERAL PRACTICE § 134.30, p. 134-62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a *previous* proceeding.") (emphases added).

For the doctrine of judicial estoppel to be an effective safeguard against abuse of the judicial system, its reach must extend to situations like the present. The alternative would be to threaten dismissal of unreported claims that surface while bankruptcy is pending, yet reward parties that manage to keep them hidden from the

bankruptcy court throughout the entire process. Such a result would indeed make a mockery of the judicial system. Far from straining the doctrine beyond its intent, the present situation provides an example of the very sort of abuse it seeks to curtail.

**V. Conclusion.**

Because Gralyn Lawson failed to disclose his claims against MBUSI to the Bankruptcy Court, he is estopped from asserting them here. Danny Bankston, Frank Coffin, Melissa Martin, Gary Quarles, Donald White, and Alvin Williams are likewise estopped from bringing the claims which they—undisputedly—failed to disclose in bankruptcy. Summary judgment is therefore GRANTED as to all seven Plaintiffs. As to the six Plaintiffs for whom the motion was unopposed, and only those six, the Court expressly finds no just reason for delay, and will enter an order of final judgment under FED. R. CIV. P. 54(b).[6] A separate order consistent with this opinion will be entered.

Done this 22nd day of December, 2011.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[167037]

---

[6] Although MBUSI has similarly requested a Rule 54(b) certification as to Lawson's claim (and Plaintiffs failed to oppose it in their response brief), the Court declines to make such a finding. The Court is mindful that "[d]istrict courts should be conservative in exercising their Rule 54(b) discretion," and should do so informed by the "strong policy against piecemeal litigation." *In re Southeast Banking Corp.*, 69 F.3d 1539 (11th Cir. 1995). As Gralyn Lawson is the subject of other motions yet to be addressed by the Court, the "interest of sound judicial administration" counsels against such certification at this time. *Id.*